**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-03340-WJM-BNB

TAMMY ARMSTRONG,

    Plaintiff,

v.

I-BEHAVIOR INC.,

    Defendant.

---

**ORDER GRANTING AND DENYING MOTION TO STRIKE OR,
ALTERNATIVELY MOTION IN *LIMINE***

---

This matter comes before the Court on the Plaintiff Tammy Armstrong's ("Plaintiff") Motion to Strike Defendant's Rebuttal Witness or, Alternatively Motion in *Limine* ("Motion"). (ECF No. 54.) Defendant I-Behavior Inc. opposes the Motion (ECF No. 58); Plaintiff has filed a reply. (ECF No. 62.)

For the reasons set forth below, the Court grants the motion in part, and denies in part.

### I. BACKGROUND

**A.  Factual Background**

This Court's Scheduling Order required the parties to designate their affirmative experts and disclose each of their expert's reports on or before June 29, 2012. (ECF No. 13). In the Scheduling Order, Plaintiff indicated that she would name an expert witness on the subject of "economic damages," and Defendant indicated it would be "calling rebuttal expert(s) to Plaintiff's experts to the extent relevant to the case." (*Id.*)

The Scheduling Order further required the parties to designate all rebuttal experts on or before July 30, 2012, later modified to September 21, 2012. (ECF No. 23).

On June 29, 2012, in accordance with the Scheduling Order, Plaintiff disclosed the expert testimony of Dr. Jane Lillydahl, Ph.D., ("Dr. Lillydahl"), an economist, concerning "Ms. Armstrong's economic losses, past and future, arising from her constructive discharge from her employment with Defendant." (ECF No. 54-1; ECF No. 54-2). Dr. Lillydahl was limited to an appraisal of the economic loss suffered by Ms. Armstrong as a result of her constructive discharge. Dr. Lillydahl's expert testimony addressed the difference between Plaintiff's earnings had she not been constructively discharged, and her actual earnings post-discharge. (*Id.*) Defendant did not designate an affirmative expert witness on or before the June 29, 2012 deadline.

On September 21, 2012, Defendant designated Ms. Margot Burns MS, CRC, CLCP as a rebuttal expert, stating that she will testify "concerning Plaintiff's ability to find comparable employment after leaving I-Behavior, and other matters relevant to this lawsuit." (ECF No. 54-3; ECF No. 54-4.)

**B.     The Experts**

Dr. Lillydahl opines to Plaintiff's economic loss from a quantitative perspective. In terms of its coverage, Dr. Lillydahl's report addressed: (1) that Plaintiff worked as a senior accountant (earning a $64,000 annual salary) at I-Behavior; (2) that Plaintiff's previous employer (Defendant I-Behavior) was located in Louisville, Colorado; (3) Plaintiff now resides in South Dakota; (4) that after leaving Defendant I-Behavior, Plaintiff was able to secure jobs as a payroll specialist ($13/hr) and as an office manager/bookkeeper ($15/hr) in South Dakota; (5) that Plaintiff's alleged economic

losses is based upon the average salary for accountants. (ECF No. 54-2 at 2-3.)

Dr. Lillydahl's methodology for calculating Plaintiff's alleged past economic losses, examined: (a) loss of earnings, (b) loss of employee benefits, and (c) non-compensation for overtime pay which occurred before August 2, 2011. (ECF No. 54-2 at 3.) To calculate future economic loss, Dr. Lillydahl stated that the following methodology:

> "Future earning losses commence June 16, 2012 and continue until Ms. Armstrong is able to "catch up" to her pre-separation earnings. Given that her current salary is approximately half of her cost-of-living adjusted salary at I-Behavior ($31, 200 versus $58,523), it is expected that it will take a minimum of four to six years for her to "catch up" to her former earnings. A net discount rate of 1.5 percent is used to convert future losses to present value terms."

(*Id.* at 3) Based on the above methodologies, Dr. Lillydahl' calculated Plaintiff's past economic losses ($39,600) and future economic loss ($177,700) to the total of $217,300. (ECF No. 54-2 at 3-4.)

Defendant's rebuttal expert, Ms. Burns, opined to Plaintiff's economic loss from a qualitative and, to a lesser extent, a quantitative perspective. (ECF No. 54-4.) The testimony was addressed through the lens of a vocational evaluation. Ms Burns' testimony covered many of the points in Dr. Lillydahl's opinion, albeit from a different perspective. For example, Ms. Burns addressed subject matter going to economic damages within the scope of points (1)-(5) that are stated on the previous page of this Order. (ECF No. 54-3.) Notwithstanding this, Plaintiff moves the Court for an order striking Defendant I-Behavior Inc.'s designation of its rebuttal expert witness.

## II.  STANDARD OF REVIEW

Fed. R. Civ. P. 26(a)(2)(C)(ii) defines a rebuttal expert as one whose testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party."  Fed. R. Civ. P. 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

"Adherence to progression order deadlines is critical to achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive determination of every action.' " *Marmo v. Tyson Fresh Meats*, Inc., 451 F.3d 748, 759 (8th Cir. 2006) (*quoting* Fed.R.Civ.P. 1).  The power of trial courts to "exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential to the judge's control over the case."  *Boardman v. National Medical Enterprises*, 106 F.3d 840, 843 (8th Cir. 1997).  Nonetheless, "the district court's discretion narrows as the severity of the sanction or remedy it elects increases."  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).

## III.  ANALYSIS

Plaintiff contends Ms. Burns' testimony is improper rebuttal testimony because it attempts to introduce new affirmative evidence in the guise of rebuttal evidence. Plaintiff contends that Ms. Burns' testimony does not cover the same subject matter as that term is defined in Fed. R. Civ. P. 26(a)(2)(C)(ii). (ECF No. 54 at 2.)  And because Defendant did not disclose Ms. Burns as an affirmative witness, Plaintiff contends that the evidence should be stricken from the record since it was not timely filed.

Defendant disagrees. Defendant contends that Ms. Burns' testimony addresses the same subject matter as Dr. Lillydahl's testimony (albeit via a differing methodology). Defendant contends that Ms. Burns' testimony goes to the heart of Plaintiff's claimed damages (economic loss) based on vocational theories and analysis. Defendant asserts that Ms. Burns' testimony still "speaks to the 'same subject matter'" as that addressed by Plaintiff affirmative expert. (ECF No. 58 at 3.)

### A.   Fed. R. Civ. P. 26(a)(2)(C)(ii): Meaning of the Phrase, "the Same Subject Matter."

To reconcile the Parties' arguments, the Court must first address the meaning of the phrase "same subject matter" as it is framed in Fed. R. Civ. P. 26(a)(2)(C)(ii). The Rule provides that rebuttal expert testimony is testimony which is "intended solely to contradict or rebut evidence on the **same subject matter** identified by another party." (emphasis added.) Neither the Advisory Committee Notes to Rule 26, nor case law in the District of Colorado, as cited by the parties, explains what is meant by "same subject matter." Several cases outside the district provide guidance. *See, In re Air Crash Near Kirksville, MO on October 19, 2004*, 2007 WL 2363505 (E.D. Mo. August 16, 2007); *TC Systems, Inc. v. Town of Colonie, New York*, 213 F. Supp.2d 171, 180 (N.D. New York, 2002); *IBM v. Fasco Industries, Inc.*, 1995 WL 11542 at *3 (N.D. Cal. March 15, 1995).[1]

---

[1] The Court notes that the Parties did not cite any case law from the District of Colorado with respect to Fed. R. Civ. P. 26(a)(2)(C)(ii). Specifically, the Parties did not cite any cases from this district that interprets the phrase: "same subject matter."

Upon review of these cases, the Court finds the interpretation of the phrase "same subject matter" in *TC Systems, Inc. v. Town of Colonie, New York*, 213 F. Supp.2d 171, 180 (N.D. New York, 2002) is most persuasive. In that case, the court did not place an overly restrictive interpretation on the operative phrase. The court rejected plaintiff's argument that the phrase should be construed narrowly to preclude defendant's expert, finding that such a construction would impose an additional "restriction" on parties that is not included in the Federal Court Rules of Civil Procedure. *Id.*

The facts of the case are also illustrative of the contours that shape Fed. R. Civ. P. 26(a)(2)(C)(ii). Specifically, plaintiff's expert used accounting principles to calculate damages caused by a public right-of-way. Defendant's rebuttal expert disputed Plaintiff's expert's opinion from an engineering, rather than accounting, perspective. Plaintiff claimed that Defendant's rebuttal expert was improperly designated as rebuttal testimony because the expert sought to introduce new arguments. *TS Systems* 213 F.Supp.2d at 180.

The court held that defendant strategically decided to rebut economic and accounting expert testimony with practical expertise in engineering and public rights-of-way management. *Id.* The court concluded that since nothing in the Rules or case law prohibited Defendant from such a strategy, it would not interfere with a party's strategic decision. *Id.* Despite the different methodologies applied by the experts, the court found each party addressed the same subject matter—*i.e.*, damages associated with the public right-of-way. *Id.*

Here, and borrowing from the reasoning in *TS Systems*, the Court does not cabin the meaning of the "same subject matter" to mean that a rebuttal witness must meet an

affirmative expert report with the same methodology.  To restrict rebuttal evidence to the exact methodologies used by Dr. Lillydahl's would be an overly restrictive interpretation of the phrase "same subject matter."  *See, TC Systems Inc.*, 213 F.Supp.2d at 180.  It must be remembered that Fed. R. Civ. P. 26(a)(2)(C)(ii) does not just apply to experts addressing economic damages; but all experts; in all fields—economics, science, the environment.  Were the Court to confine the phrase "same subject matter" in an overly restrictive fashion, it would effectively preclude many methodologies from being introduced through rebuttal evidence.  It would also hamstring the Court's discretion in trial matters, where there is no mandate to do so.  This Court is not prepared to do that for many of the reasons stated in *TS Systems* 213 F.Supp.2d at 180 (addressing how expert testimony going to "health impacts caused by use of public rights-of-way and how these costs are not easily identifiable or accounted for" may rebut straightforward "accounting methodologies" for actual costs of same.)

The Court also finds several factual similarities between *TS Systems* and the instant case.  Because of these factual similarities, a similar result must yield.  First, Dr. Lillydahl, pitches her report at a quantitative level, basing her conclusions on an economic perspective—much like the plaintiff's expert in *TC Systems* who prepared his report from an economic perspective.  Second, Ms. Burns rebutted Dr. Lillydahl's conclusions largely from a vocational evaluation perspective—this is similar to defendant's expert in *TC Systems* who prepared his report from an engineering perspective.  But here, Ms. Burns' vocational evaluation testimony is probably even closer to that of the Plaintiff's testimony than that in *TS Systems*.  Specifically, Ms. Burns' testimony addressed: (1) Plaintiff's ability to find comparable employment after

leaving Defendant, (2) Plaintiff's efforts to find comparable positions, and (3) the duration of time reasonable to find comparable employment. The Court finds that all of these factors are relevant to drawing a conclusion regarding Plaintiff's alleged past and future lost wages—and rebutting Plaintiff's expert's conclusions on economic loss.[2]

Accordingly, the Court finds that to a large extent Ms. Burns' rebuttal testimony is within the same subject matter as Dr. Dr. Lillydahl's conclusions on economic loss. And to the extent that the testimony is beyond the scope of Dr. Lillydahl's conclusions, the Court strikes only those portions from the record.[3] The Court finds that those paragraphs that should be stricken from the record, include:

1. All references to the Deposition Transcript of Tammy Armstrong - 8/14/12 through to the end of Deposition Transcript of Joseph Bosson - 8/15/12. (ECF No. 54-4 at 2-5.)[4]

2. All paragraphs below the heading, "Summary"—*i.e.*, the last three paragraphs on page 9. (ECF No. 54-4 at 9.)

3. The last paragraph on page 10 stating with "I also noted in Ms. Armstrong's testimony. . ." (ECF No. 54-4 at 10.)

Accordingly, the abovementioned paragraphs will be stricken from Ms. Burns'

---

[2] Moreover, like the defendant in *TC Systems*, Defendant in this case has made a strategic choice not to rely upon the same methodologies as that of Plaintiff's expert. Because there is nothing in the Federal Rules of Civil Procedure that prevents a party from making such strategic decision as noted in TS System, the Court finds that this same rationale applies in this case.

[3] Plaintiff subscribes to this remedy in the alternative in her reply brief. (ECF No. 62 at 7)

[4] The Court finds that this testimony is superfluous, and does not tend to come within the scope of Dr. Lillydahl's conclusions other than providing background information.

testimony. The remaining portions of Ms. Burns' testimony will remain in the record.

To mitigate any undue prejudice against Plaintiff, the Court grants Plaintiff leave to reply to any methodology or opinion of Ms. Burns via a supplemental report from Plaintiff's expert witness, Dr. Lillydahl. *TS Systems* 213 F.Supp.2d at 180 (stating that the court is "guided by inherit notions of fairness" . . . and that the plaintiffs' failure to anticipate their need for an engineer was excusable, thus allowing the plaintiff with an opportunity to address the information contained in the engineer's report.)

## IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Plaintiff's Motion to Strike Defendant's Rebuttal Witness or, Alternatively Motion in *Limine* (ECF No. 54), and ORDERS as follows:

1. Portions of Ms. Margot Burns' testimony (ECF No. 54-4) will be stricken from the record consistent with what has been stated in this Order, above.

2. Plaintiff is GRANTED leave of the Court to file further expert testimony addressing any methodology or opinion stated in Ms. Margot Burns' testimony, consistent with what has been stated in this Order, above. (ECF No. 54-4.)  This supplemental report must be filed no later than **July 10, 2013.**

3. The Parties[5] are DIRECTED to file separate a Status Reports indicating

---

[5] The Court notes that Defendant has filed a Motion for Summary Judgment in this matter. (ECF No. 66.)  The Motion is now ripe for disposition.  In order to foster resolution of this matter, the Court also seeks from the parties information regarding settlement discussions (if any).  This provides the purpose for the parties separate filings on points 3.-5. of the instant Order.

       whether they have undertaken any of the following settlement efforts:

       (A) Informal Attorney-Attorney negotiation;

       (B) Formal Mediation or Arbitration by a private party; and/or

       (C) Whether the Parties have considered requesting a settlement conference, or Early Neutral Evaluation, pursuant to D.C.COLO.LCivR 16.6(A)[6] before a Federal Court Magistrate Judge.

4. In this Status Report the Parties are also to indicate their best estimate of prospects of settlement in this case, either a scale of 1-10 (with 10 being highly probable), or by evaluating same as low, medium or high.

5. If the Parties believe that a settlement conference with a Magistrate Judge would be beneficial in reaching resolution of the matter, the parties should expressly say so in their Status Report. These Reports shall be filed no later than tomorrow, **June 4, 2013.**

Dated this 3rd day of June, 2013.

                                                       BY THE COURT:

                                                       William J. Martínez
                                                       United States District Judge

---

[6] Pursuant to 28 U.S.C. § 652, all litigants in civil cases shall consider the use of an alternative dispute resolution process.